### 16650. JONES *v.* THE STATE.

A conviction of trespass was authorized by the evidence.

DECIDED NOVEMBER 10, 1925.

Accusation of trespass; from city court of Ludowici—Judge Price. June. 8, 1925.

The accusation charged W. H. Jones with having unlawfully entered upon and cut twenty-nine cypress trees on certain uninclosed land of W. D. Farris and R. K. Hopkins, on December 31, 1923. On the trial there was evidence that in December, 1923, the land described was owned by W. D. Farris, and that during that month twenty-nine cypress trees were cut off the land. Farris testified: "Jones was cutting the timber on the adjoining land. There is a line dividing my land from the land they were working on; it is a surveyed and blazed line. A portion of the land— nearly all—is in the swamp. The line I would not say is clear, but it is clear enough to see between my land and the land they had a lease over. . . I guess anybody could see that it was a land line. Most of it was through the swamp. . . I did not see Jones cutting the timber. . . Mr. Jones knew he was cutting this timber on my land, for I sent him a letter and told him that he was cutting the timber on my land, and he did not pay any attention to my letter, and so I sent him another one by registered mail and told him that he was cutting my timber. I registered that letter at Ludowici. The first letter came back, but the registered letter was not returned. . . I had been informed that Mr.

Jones had been cutting timber. . . There had been other timber cut beside this, and that is why I wrote Mr. Jones this letter." John Smith testified: "I went with Mr. Farris and saw where the timber was cut. I hauled some of the timber off the land. It was off Mr. Farris' land. I was working for Mr. Jones. . . I did not know that I was hauling the timber off Mr. Farris' land. I did not know his land only when they showed me where the timber was cut and they told me it was his land." It was testified that Farris said to Jones, "You know you cut my timber, and I want you to pay for it;" that Jones asked him what he wanted for it, and Farris said that he would take $100 for it, and Jones said he would like to have it counted, and he could then arrive at the amount, and Farris said that he had already counted it; that later a letter offering to settle for $50 was written to Jones, but nothing was heard from him in response to the offer.

I. B. Skipper, a witness for the defendant, testified: "I worked for Mr. Jones during the year 1923. I was overseeing his business, and he employed me to keep his hands straight with reference to lines, and not to let them cut over the lines. . I know where Mr. Farris' land is, and I know where the line is dividing the land over which Mr. Jones was cutting and the land of Mr. Farris. I know those lines, as I had been in charge of the land for a number of years, for the people they leased from, and they did not cut any timber over the lines. I was not working for Mr. Jones individually, but was working for the Roberson-Jones Lumber Company. Mr. Jones is a member of the firm of Roberson-Jones Lumber Company. . . I was not working for Mr. Jones at the time the timber was alleged to have been cut, and don't know anything about the cutting of this particular timber." The defendant, in his statement at the trial, said: "I was cutting this timber for the Roberson-Jones Lumber Company. I had Mr. Skipper employed to keep me straight on the lines, and I don't know whether or not we cut any timber over the line. I was not there when it was alleged the timber was cut. It is true that I had a talk with Mr. Farris with reference to the cutting of this timber, and I told him that if I had cut any timber, I was willing to pay him for it. I don't know whether or not I cut this timber. I was depending upon Mr. Skipper to keep me straight on the lines, as he knew all about the lines. I did not cut the timber myself, but

if there was any cut it was cut in the name of Roberson-Jones Lumber Company, as I was not operating at the time as an individual."

*Raymond Pierce,* for plaintiff in error.
*Thomas J. Parrish, solicitor,* contra.

BLOODWORTH, J. The verdict is approved by the trial judge, and this court can not say that there is no evidence to support it. In *Rogers* v. *State,* 101 *Ga.* 562, 563 (28 S. E. 978), Justice Cobb said: "Applications for new trials on the ground that the verdict of the jury is contrary to evidence are addressed to a sound legal discretion to be exercised by the trial judges. When this discretion has been exercised and the motion for a new trial overruled, this court will not interfere where there is any evidence which would justify the jury in reaching the conclusion which it set forth in the verdict. While in many cases we would probably not have rendered the verdict returned, and, if we were authorized to pass upon the case as on appeal, would render here a different judgment, still under the established practice of this court as required by the law of this State, we can not overrule a trial judge, who, fresh from the atmosphere of the trial, sends to us a record in which he endorses the finding of the jury which tried the case in his presence. This is true even in cases where the evidence might be described as weak, unsatisfactory, and doubtful. The wisdom and discretion of the trial judge is sufficient for us to endorse his judgment in cases of this character."

The facts in the instant case differentiate it from the case of *Campbell* v. *State,* 127 *Ga.* 307 (56 S. E. 417), cited and relied upon by the plaintiff in error.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*